In Re: Maude's Alabama BBQ, LLC

Case No. 24-31583
Ch.       11
Judge:    Joel D. Applebaum

Debtor.

_____/

## COVER SHEET FOR MOTION FOR ENTRY PERMITTING USE OF CASH COLLATERAL AND AUTHORIZING ADEQUATE PROTECTION

The debtor has filed a motion to use cash collateral, which is attached to this Cover Sheet. In

accordance with LBR 4001-2(6) (E.D.M.), the debtor has identified below, by page and paragraph number,

the location in the proposed order accompanying the motion of each of the following provisions:

| Provision | Contained in Proposed Order | Location in Proposed Order |
|---|---|---|
| (1) Provisions that grant liens on the estate's claims and causes of action arising under Chapter 5 of the Code. | **X**   NO | Page_, |
| (2) Provisions that grant cross-collateralization protection to the prepetition secured creditor (i.e., clauses that secure prepetition debt with categories of collateral that were not covered by the secured party's lien prepetition) other than liens granted solely as adequate protection against diminution in value of a prepetition creditor's collateral. | X   No | Page_, |

| | | |
|---|---|---|
| (3) Provisions that establish a procedure or conditions for relief from the automatic stay. | **X** No | Page ____ __ |
| (4) Provisions regarding the validity or perfection of a secured creditor's prepetition liens or that release claims against a secured creditor. | **X NO** | Page ____, __ |
| (5) Provisions that prime any lien without that lienholder' s consent. | **X** No | Page___ , |
| (6) Provisions that relate to a sale of substantially all of the debtor's assets. | **X** No | Page___ , |
| (7) Provisions for the payment of professional fees of the debtor or any committees, including any carve-outs for such payments. | **X** No | **Page_,** |
| (8) Provisions for the payment of prepetition debt. | **X NO** | Page___ , |
| (9) Provisions that waive the debtor's exclusive right to file or solicit acceptances of a plan during the time periods specified in 11 U.S.C. § 1121. | **X** No | Page___ , |
| (10) Provisions that require the debtor's plan to be on terms acceptable to the secured creditor. | **X** No | Page___ , |
| (11) Provisions that require or prohibit specific terms in the debtor's plan. | **X** No | Page___ , |

| | | |
|---|---|---|
| (13) Provisions that waive surcharge under 11 U.S.C. § 506(c). | <u>X</u>   **NO** | Page___, |
| (14) Provisions that address the rights and obligations of guarantors or co-obligors. | <u>X</u>   **NO** | Page __, |
| (15) Provisions that prohibit the debtor from seeking approval to use cash collateral without the secured creditor's consent. | <u>X</u>   NO | Page __, |
| (16) Provisions that purport to bind a subsequent trustee. | <u>X</u>   **NO** | Page __, |
| (17) Provisions that obligate the debtor to pay any of a secured creditor's professional fees. | <u>X</u>   **NO** | Page___, |

Respectfully submitted,

BANKRUPTCY LAW OFFICE

Dated: 8/23/24

<u>/s/   George E. Jacobs</u>
George E. Jacobs (P36888)
2425 S. Linden Rd., Ste. C
Flint, MI 48532
(810) 720-4333
george@bklawoffice.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

In Re: Maude's Alabama BBQ, LLC

Case No.  24-31583
Ch.       11
Judge:    Joel D. Applebaum

Debtor.

_____./

## DEBTOR'S MOTION FOR INTERIM AND FINAL ORDER TO AUTHORIZE THE USE OF CASH COLLATERAL PURSUANT TO SECTION 363 (C) OF THE BANKRUPTCY CODE GRANTING ADEQUATE PROTECTION FOR THE USE THERE OF AND SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULE 4001 AS TO USE OF CASH COLLATERAL

The above-captioned Debtor and Debtor in possession (collectively, the Debtor) by and through its undersigned proposed attorney hereby file this Motion for Interim and Final Order Authorizing Use of Cash Collateral Pursuant to Section 363(c) of the Bankruptcy Code Granting Adequate Protection for the use thereof and Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001 as to Use of Cash Collateral (the "Motion) and in support hereof, respectfully states as follows:

### I.
### JURISDICTION AND VENUE

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief requested in this Motion are Bankruptcy Code§§ 105,361,362 and 363 and Bankruptcy Rules 2002, 4001, and 9014.

### II.

### BACKGROUND

1.    On August 23, 2024 ("the Petition Date"), the Debtor filed voluntary petition for relief (the "Bankruptcy Case") under chapter 11, title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy

Court for the Eastern District of Michigan (the "Court"). The Debtor continues to operate

and manage its business as Debtor in possession pursuant to sections 1107(a) and 1108 of

the Bankruptcy Code.

2.   The Debtor operates 2 barbecue restaurants. It also wholesales its own sauces. It employs

20 people and has been operating since 201 9 in the Genesee and Lapeer County Michigan area.

It's majority shareholder is Ronald Darnell. The filing of the bankruptcy came as the result of the

Debtor's failure to cash flow having to borrow money from merchant cash advance creditors to cover

unexpected expenses. The Debtor covered not service this debt.

3.   Idea 247, Inc. holds a first lien on the Cash Collateral assets of the Debtor to secure its

loan of $41,891. This loan is partially unsecured as the value of the assets of the Debtor which

secure this loan totals $31,000.

## IV
## RELIEF REQUESTED

4.  Pursuant to Bankruptcy Rule 4001(b), the following summarizes the material terms of the

Interim Order. The Debtors seek authority to use the Cash Collateral (as defined below). The Debtor seeks to use

such Cash Collateral as working capital in the operation of its business for the purposes specified in, and at least

for the period defined in the attached budget. As adequate protection for the diminution value of Cash

Collateral, the Debtor will maintain the value of its business as a going concern, and provide replacement liens

upon now owned and after-acquired cash to the extent of any diminution of value of Cash Collateral for both

creditors with liens on Cash Collateral.

5. By this Motion, pursuant to Bankruptcy Code§§ 105,361,362, and 363 and Bankruptcy Rules 2002, 400 I, and 9014, the Debtor requests that the Court enter an order approving the Debtor's use of Cash Collateral, providing adequate protection for, and to the extent of, any diminution in the value of Cash Collateral, and scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order (the "Final Order") authorizing and approving the relief requested in this Motion.

## V.
## APPLICABLE AUTHORITY

6. Under 11 U.S.C. § 363 (c)(2), a Debtor may use cash collateral if each entity that has an interest in such cash collateral consents or the Court, after notice and a hearing authorizes the use of cash collateral. Cash collateral is defined as, "Cash negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest". 11 U.S.C. § 363(a). Pursuant to 11 U.S.C. § 363 (c)(3), the Court must condition a Debtor's use of cash collateral as is necessary to provide adequate as is necessary to provide adequate protection of the interest in the cash collateral claimed by a patty.

7. Bankruptcy Rule 4001(b) and (d) governs the procedure for consideration of motions to use cash collateral, and both of these subsections provide for expedited consideration of such mo tions for cases in which immediate interim relief may be crucial to the success of a reorganization.

8. At a hearing on Debtor's motion for the use of cash collateral, the Debtor bears the burden of proof on the issue of adequate protection, and the party, claiming an interest in the cash collateral bears the burden of proof on the issue of the validity, priority, or extent of the lien. 11 U.S.C. § 363 (p) ("In a hearing under (§363), the entity asserting an interest in property has

the burden of proof on the issue of the validity, priority, or extend of such interest".)

A. **Failure to Obtain the Immediate Interim Use of Cash Collateral Would Cause Immediate and Irreparable Harm.**

9.  As set forth in the Declaration of Ronald Darnell in Support of the Debtor's Chapter 11 Petitions and First Day Motions the Debtor's inability to access cash pre-petition could force the Debtor to cease operations assets. Accordingly, the Debtor faces "immediate and irreparable harm to the estate" absent the consideration of the relief requested in this motion. The immediate use is necessary, and it will stabilize the Debtor's operations and revenue by allowing the Debtor to main tain minimal staffing levels sufficient to operate the Debtor's business. Without authority to use Cash Collateral, the Debtor will not be able to function as a going concern and will not be able to proceed to consideration of a plan of reorganization. The Debtor posses substantial assets which could be lost entirely if the Debtor is unable to resume operations. Accordingly, authority to use Cash Collateral is necessary to avoid the shutdown of the Debtor's business, and will be in the best interest of the Debtor, its estates and its creditors.

B. **The Proposed Adequate Protection**

10. The Debtor intends to provide adequate protection, to the extent of the aggregate diminution in value of Cash Collateral from and after the Petition Date, to Lenders for the use of the Cash Collateral by:

   a. Maintaining the going concern value of the Debtor's business by using the Cash collateral to continue to operate the business and administer this Chapter 11 Case; and

   b. Providing to Idea 247, Inc. post petition replacement liens pursuant to 11 U.S.C.§ 363 (p) (2) in the cash collateral assets of the Debtor, including cash generated or received by Debtor subsequent to the Petition Date, but only

to the extent that they shall be the same as existed as of the Petition Date.

11. The Debtor believes that Idea 247, Inc. is adequately protected for the use of the cash collateral in that the orderly operation of the Debtor's business generates sufficient revenues to protect any diminution in value of the cash collateral. Indeed, the continuation of the Debtor's operations presents the best opportunity for Idea 247, Inc. to receive the greatest recovery on account of their claims. Accordingly, the Debtor submits that use of cash collateral will allow the Debtor to continue its operations and thereby protect the interests of Idea 247, Inc.

12. Courts have consistently recognized that the preservation of the going concern value of secured creditors collateral constitutes adequate protection of such creditors interests the collateral. *See, e.g., In re Pursuit Athletic Footwea,; Inc..* 193 B.R. 713, 716 (Bankr D. Del. 1996) (holding that if there is no actual diminution of value of collateral, and the Debtor can operate profitably post petition, then the secured creditor is adequately protected); *In re 499 W Warren St. Assoc., Ltd P ship,* 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992) (finding a secured creditor's interest in collateral adequately protected when cash collateral was applied to normal operating and maintenance expenditures on the collateral property); *In re Willowood E. Apartments of Indianapolis IL Ltd.,* 114 B.R, 138,143 (Bankr. S.D. Ohio 1990) (same); *In re Stein,* 19 B.R. 458,460 (Bankr. E.D. Pa. 1982) (creditors' secured position would be enhanced by the continued operation of the Debtor's business); *In re Aqua Assocs.,* 124 B.R. 192, 196 (Bankr. E.D. Pa 199 1) ("The impOl lant question, in determining whether the protection to a creditor's secured interest is adequate, is whether that interest, whatever it is is being unjustifiably jeopardized." (citation omitted).

## V.
## REQUEST FOR INTERIM RELIEF

13.   An immediate need exits for the Debtor to obtain approval of the use of cash collateral in order to meet key expenses as described above and as identified in the Budget attached as Exhibit "B". This amount totals $107,777 for the 6 week period for August 23, 2024 through October 5, 2024. Without the immediate use of the cash collateral for an interim period, the Debtors will **not** be able to resume operations and risks the loss of significant assets. Clearly this would have a severe negative impact upon the Debtor's going concern value and ability to successfully create value for all creditors. The Debtor's business, as a going concern, has a value far in access of any value that might be obtained in a chapter 7 liquidation.

## VI.
## REQUEST FOR FINAL HEARING

14. Pursuant to Bankruptcy Rules 400l(b)(2) and 400l(c)(2), the Debtor also requests that the Court set a date for a final hearing as soon as practicable and fix the time and date prior to the Final Hearing for parties to file objections to this Motion.

15. Notice of this Motion will be provided by email, when available, or by traditional mail to: the Office of the United States Trustee for the Eastern District of Michigan to the Debtor's secured creditors the parties listed on the Debtor's master service list and the Sub Chapter V Trustee. The Debtor submits that in light of the nature of the relief requested, no other or further notice need be given.

## VIII.

WHEREFORE, the Debtor requests that this Court enter an order, in substantially the form filed herewith, granting relief requested in this Motion, and such other and further relief as may be just and proper under the circumstances.

Respectfully submitted,

**BANKRUPTCY LAW** OFFICE

Dated: 8/23/24

*/s/* George E. Jacobs
George E. Jacobs (P36888)
Attorney for Debtor
2425 S. Linden Rd., Ste. C
Flint, MI 48532
(810) 720-4333
george@bklawoffice.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN-SOUTHERN DIVISION

In Re: Maude's Alabama BBQ, LLC

Case No. 24-31583
Ch.    11
Judge:  Joel D. Applebaum

Debtor.

_____/

## ORDER GRANTING DEBTOR'S AUTHORIZATION FOR DEBTOR'S INTERIM USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION TO IDEA 247, INC.

This matter came before the Court upon Debtor's Motion for Interim Order Authorizing Debtor's use of Cash Collateral filed on August 23, 2024.

The Court has reviewed the Motion, and other pertinent pleadings, and has considered the statements made at the initial hearing. The Court is sufficiently advised in the premises.

    c.    On August 23, 2024. ("Petition Date"), the Debtor filed for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code (the "Bankruptcy Code").

    d.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

    e.    The Court's consideration of this Motion constitutes a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A), (K) and (M).

    f.    The procedures set forth in this Order constitute sufficient "notice and hearing" under Section 102 and 363(c) of the Bankruptcy Code, Bankruptcy Rule 2002, 4001, 6004 and 9006. This Order is being entered solely on an interim basis pursuant to Bankruptcy Rule 4001, and is expressly subject to the rights of parties in inter est to object as specifically provided in paragraph below.

g.    Debtor requires funds to pay expenses in connection with maintaining operations, including satisfying taxes, payroll, and paying utilities. Failure to pay these and similar critical expenses would cause Debtor immediate and irreparable harm by disrupting Debtor's ability to maintain operations, effectively shutting down Debtor.

h.    Debtor does not have sufficient unencumbered funds to meet these expenses. Accordingly Debtor requires authorization to use cash collateral to avoid immediate and irreparable harm. The amount of cash Debtor proposes to use before entry of a final order granting the Motion (including adequate protection payments as authorized under this Order) is $107,777.

i.    The Debtor has the following pre-petition indebtedness with the following creditors with an interest in Cash Collateral:

> 1. Idea 247, Inc.  $41,893

NOW, THEREFORE, IT IS HEREBY ORDERED that the Debtor is authorized to use cash collateral, but only under the terms and conditions set forth in this Order.

1. Idea 247, Inc. (hereinafter "Secured Creditors") shall receive re placement liens in the Debtor's post petition assets to the same extent and with the same priority it had by virtue of the pre-petition perfected security interests as of the petition date but only as to the amount of diminution in value of its interests.

2. Debtor's permission to use cash collateral shall terminate upon the occurrence of any of the following: (a) Debtor's failure to abide by any of the terms and conditions contained in this Order, any Debtor-in Possession order, or any other order of this Court; (b) an order being entered dis missing this case or converting this case to a case under Chapter 7 of the Bankruptcy Code, appointing Trustee to perform any duties of the Debtor, or terminating the authority of the Debtor to conduct

business; or (c) Debtor's cessation of operations for any reason.

3. As adequate protection of the interests of the Secured Creditors under §§ 361,362, and 363(e) of the Bankruptcy Code, and to secure the payment of the indebtedness, the secured creditors are hereby granted security interests and replacement liens to the extent of the Secured Creditors were secured as of the petition date, upon the following property of the Debtor: all assets of the Debtor including, but not limited to, all accounts that the Debtor maintains, accounts receivable, notes (and all collateral security therefor), general intangibles (including, but not limited to, any insurance proceeds), chooses in action, instruments, documents, chattel paper, goods, inventory, fixtures, equipment, chattels, machinery and furniture, and the products and proceeds of all of the foregoing, arising, created or acquired. subsequent to the filing of the Chapter 11 Petition provided, however, that any causes of action brought under Chapter 5 of the Code and recoveries there from (collectively, "Chapter 5 Causes of Action") shall be excluded from the collateral of the Secured Creditors. The security interests and liens granted by this paragraph shall constitute perfected liens and security interests in favor of the secured creditors on all personal property of the Debtor except Chapter 5 causes of action.

4. In addition to and separate from the replacement liens, the Secured Creditors liens on the collateral pursuant to the security agreements will extend to post petition collateral and the products, profits and proceeds thereof under §552 (b). The Secured Creditors will be entitled to all of the rights and benefits of §552 (b) and the "equities of the case" exception in §552 (b) will not apply with respect to the proceeds, products or profits of any of the collateral.

5. The Debtor shall duly pay as the same shall become due and payable all post-petition taxes, assessments and governmental and other charges, which if unpaid, might become a lien or charge upon the collateral, assets, earnings or business of the Debtor, as the case may be. The Debtor shall also pay when due, all administrative taxes, including any and all federal and state withholding taxes and personal property taxes. Further, the Debtor shall file all monthly operating reports.

6. Upon the occurrence of a material event of default by Debtor of any duty as described above and after seven (7) calendar days' written notice given by Idea 247, Inc. to Debtor, Debtor's attorney, the U.S. Trustee, and the Subchapter V Trustee and unless the default has been cured during such seven-day period, Idea 247, Inc. can file a motion on 7 days notice to lift the automatic stay.

7. Except as otherwise set forth in this Order: the Debtor acknowledges and agrees that the pre-petition indebtedness of Idea 247, Inc. constitutes valid and binding indebtedness of the Debtor. All of the cash generated constitutes cash collateral as defined in §363(a) of the Bankruptcy Code, and (b) the Debtor further acknowledges and agrees that Idea 247, Inc. has a valid and perfected

security interest in and liens on all of the Debtor's pre-petition collateral, with priority over all other security interests in and liens on the pre-petition collateral. The Debtor formerly acknowledges that the security interests and liens are not subject to avoidance. Any party can challenge the validity and priority of the security interests by filing an objection in accordance with paragraph 17.

8. No delay on the part of the secured creditors in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise of any right, power or privilege hereunder preclude other or further exercise thereof or the exercise of any other right, power or privilege. The rights and remedies hereunder specified are cumulative and not exclusive of any rights or remedies which the secured creditors may otherwise have.

9. Nothing contained herein shall: (a) bar Idea 247, Inc. from (i) asserting rights to default rate of interest, (ii) contesting any collateral valuation by the Debtor, or (iii) challenging the adequacy of any adequate protection provided in this Order; or (b) serve to compromise any rights of the Idea 247, Inc.under the Bankruptcy Code, its financing documents, this Order, or pursuant to applicable federal or state law. Likewise, nothing in this Order shall serve to prejudice any of Debtor's rights and arguments with respect to subsection a) of this paragraph, or compromise or prejudice any other

rights and interests of Debtor except as explicitly set forth in this Order.

10. In the event that this Order or any authorization contained herein is reversed or modified on appeal with respect to priorities, liens, and security interests granted under this Order, it shall not limit or affect the rights of Idea 247, Inc. arising from the payment of cash collateral in reliance upon this Order.

11. Idea 247, Inc. shall not waive, and hereby expressly reserves, any and all claims, defenses, rights and remedies they may have pursuant to any or all of its financing documents, the Bankruptcy Code and/or other applicable law against the Debtor and any officer, director, employee, agent or other representative thereof. In addition, the rights, claims, liens, security interests and priorities of arising under this Order are in addition to and are not intended as a waiver or substitution for the rights, indebtedness, claims, liens, security interests and priorities granted by the Debtor in its pre-petition capacity.

12. If this Order becomes a final order the provisions of this Order shall be binding upon the Debtor and its successors and assigns, and, except as otherwise set forth in this Order, the pre-petition indebtedness of Idea 247, Inc. constitutes an allowed claim in accordance with §506(a) of the Bankruptcy Code for all purposes in this Case, and (ii) the liens and security interests in the collateral shall be deemed to be valid, legal, binding, perfected, not subject to avoidance or subordination and not subject to any other further challenge by any party in interest, seeking to exercise the rights of the Debtor's estate.

13. If any of the provisions of this Order are hereafter modified, vacated or stayed by subsequent order of this or any other Court, such stay, modification or vacatur shall not affect the validity and enforceability of any lien, priority, right, privilege or benefit authorized hereby with respect to the pre-petition indebtedness, including without limitation, the replacement liens.

14. Notwithstanding any provision contained herein, this Order shall not be binding on any future trustee (Chapter 7 or 11). To avoid immediate and irreparable harm to the Debtor pending a final hearing on the Motion, the Debtor may use cash collateral in the maximum amount of $107,777 only until October 5, 2024.

15. Debtor shall, within twenty-four (24) hours following the entry of this Order, serve copies of this Order on each of the Debtor's 20 Largest Unsecured Creditors, all the Secured Creditors, the SubChapter V Trustee, the United States Trustee's Office, and all other parties who are required to be served under F.R.Bankr.P.2002 and 4004.

16. This Order hereby incorporates by reference the attachment regarding the 6 week budget attached to the original motion for use of cash collateral.

17. All parties seeking to object to this Order must file a written objection within fourteen (14) days after the entry of this Order. A hearing on the Motion will be held before the Honorable, Joel D. Applebaum,

United States Bankruptcy Judge, Courtroom, 226 W. Second St, Flint, MI 48502, on _____ 2024 at _____ a.m. ET. If objections are filed the hearing will be held in person with the exception that if any objector and their counsel reside out of state, they may appear by telephone. Parties should call 1-202-503-1666 and use Access Code 96965490# at least five minutes before the scheduled hearing time and should place their phones on mute and wait **until** their case is called before unmuting their phones and participating. UNDER NO CIRCUMSTANCES SHOULD ANY TELEPHONE BE PLACED ON HOLD. If no timely objection is filed then, after the final hearing on the Motion, this Order shall become final order and Debtor is thereafter authorized to use cash collateral for those expenses referenced in the cash flow projection as well as any other expenses necessary for operating the business in the ordinary course going forward until further order of the Court.

**Exhibit "A"**

**Maudes Alabamma BBQ LLC**

Financial statements in U.S. dollars

## REVENUE

| | |
|---|---|
| Gross sales | 22,000 |
| Sales Tax | *1320* |
| **Net sales** | |
| | *20,680* |

## EXPENSES

| | |
|---|---|
| Food Purchases | 6,532 |
| software expence | |
| lawn care | 350 |
| credit card fees | 464 |
| Charitable contributions | |
| Trahs pick up | 385 |
| Dues and subscriptions | |
| Employee benefit programs | |
| Insurance | - |
| Equioment lease | 500 |
| Licenses and fees | |
| Miscellaneous | |
| Office expenses | 293 |
| Third Party Deliver Expence | 575 |
| Moergage and land contract | |
| Repairs and maintenance | 650 |
| Supplies | 680 |
| Telephone | 157 |
| Travel | |
| Utilities | |
| Vehicle expenses | 255 |
| Wages | 2,900 |
| **Total expenses** | **$13,277** |
| | |
| **Net operating income** | *7403* |

*EXhibit "B"*

**Maudes Alabamma BBQ LLC**

Financial statements in U.S. dollars

## REVENUE

| | | |
|---|---|---|
| Gross sales | 23,675 | |
| Sales Tax | 1,421 | |
| **Net sales** | | **$22,255** |

## EXPENSES

| | | |
|---|---|---|
| Food Purchases | 7,122 | |
| software expence | | |
| lawn care | | |
| credit card fees | 480 | |
| Charitable contributions | | |
| Trahs pick up | | |
| Dues and subscriptions | | |
| Employee benefit programs | | |
| Insurance | 750 | |
| Equioment lease | | |
| Licenses and fees | | |
| Miscellaneous | | |
| Office expenses | | |
| Third Party Deliver Expence | 575 | |
| Moergage and land contract | | |
| Repairs and maintenance | | |
| Supplies | 586 | |
| Telephone | | |
| Travel | | |
| Utilities | | |
| Vehicle expenses | | |
| Wages | 11,750 | |
| **Total expenses** | | **$21,262** |
| | | |
| **Net operating income** | | **$994** |

**Maudes Alabamma BBQ LLC**

Financial statements in U.S. dollars

## REVENUE

| | | |
|---|---:|---:|
| Gross sales | 22,774 | |
| Sales Tax | 1,366 | |
| **Net sales** | | **$21,408** |

## EXPENSES

| | | |
|---|---:|---:|
| Food Purchases | 6,850 | |
| software expence | 60 | |
| Bad debts | | |
| credit card fees | 464 | |
| Charitable contributions | | |
| Contract labor | | |
| Dues and subscriptions | | |
| Employee benefit programs | | |
| Insurance | - | |
| Equioment lease | | |
| Licenses and fees | | |
| Miscellaneous | | |
| Office expenses | 293 | |
| Third Party Deliver Expence | 575 | |
| Moergage and land contract | 2,340 | |
| Repairs and maintenance | | |
| Supplies | 986 | |
| Telephone | | |
| Travel | | |
| Utilities | 1,945 | |
| Vehicle expenses | 277 | |
| Wages | 2,900 | |
| **Total expenses** | | **$16,353** |
| | | |
| **Net operating income** | | **$5,055** |

**Maudes Alabamma BBQ LLC**

Financial statements in U.S. dollars

## REVENUE

| | | |
|---|---|---|
| Gross sales | 26,413 | |
| Sales Tax | 1,585 | |
| **Net sales** | | **$24,828** |

## EXPENSES

| | | |
|---|---|---|
| Food Purchases | 7,944 | |
| software expence | | |
| Bad debts | | |
| credit card fees | 464 | |
| Charitable contributions | | |
| Contract labor | | |
| Dues and subscriptions | | |
| Employee benefit programs | | |
| Insurance | - | |
| Equioment lease | | |
| Licenses and fees | | |
| Miscellaneous | | |
| Office expenses | 293 | |
| Third Party Deliver Expence | 575 | |
| Moergage and land contract | | |
| Repairs and maintenance | | |
| Supplies | 680 | |
| Telephone | 157 | |
| Travel | | |
| Utilities | | |
| Vehicle expenses | | |
| Wages | 12,800 | |
| **Total expenses** | | **$22,914** |
| | | |
| **Net operating income** | | **$1,914** |

**Maudes Alabamma BBQ LLC**

Financial statements in U.S. dollars

## REVENUE

| | | |
|---|---:|---:|
| Gross sales | 23,000 | |
| Sales Tax | 1,380 | |
| **Net sales** | | **$21,620** |

## EXPENSES

| | | |
|---|---:|---:|
| Food Purchases | 6,918 | |
| software expence | | |
| Bad debts | | |
| credit card fees | 434 | |
| Charitable contributions | | |
| Contract labor | | |
| Dues and subscriptions | | |
| Employee benefit programs | | |
| Insurance | - | |
| Equioment lease | | |
| Licenses and fees | | |
| Miscellaneous | | |
| Office expenses | 293 | |
| Third Party Deliver Expence | 575 | |
| Moergage and land contract | | |
| Repairs and maintenance | | |
| Supplies | 680 | |
| Telephone | 157 | |
| Travel | | |
| Utilities | 1,450 | |
| Vehicle expenses | | |
| Wages | 2,900 | |
| **Total expenses** | | **$12,973** |
| | | |
| **Net operating income** | | **$8,647** |

**Maudes Alabamma BBQ LLC**

Financial statements in U.S. dollars

## REVENUE

| | | |
|---|---:|---:|
| Gross sales | 22,850 | |
| Sales Tax | 1,371 | |
| **Net sales** | | **$21,479** |

## EXPENSES

| | | |
|---|---:|---:|
| Food Purchases | 6,768 | |
| software expence | | |
| lawn care | | |
| credit card fees | 480 | |
| Charitable contributions | | |
| Trahs pick up | | |
| Dues and subscriptions | | |
| Employee benefit programs | | |
| Insurance | | |
| Equioment lease | | |
| Licenses and fees | | |
| Miscellaneous | | |
| Office expenses | | |
| Third Party Deliver Expence | 575 | |
| Moergage and land contract | 517 | |
| Repairs and maintenance | | |
| Supplies | 450 | |
| Telephone | 308 | |
| Travel | | |
| Utilities | | |
| Vehicle expenses | 150 | |
| Wages | 11,750 | |
| **Total expenses** | | **$20,998** |
| | | |
| **Net operating income** | | **$481** |